UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,

       - against -

                                     09 CR 323 (RPP)

ANDREI VOUSTIANIOUK,

                                     **ORDER & OPINION**

                         Defendant.
---------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On January 22, 2009, Immigration and Customs Enforcement ("ICE") agents executed a search warrant at Defendant Andrei Voustianiouk's ("Defendant") Bronx apartment, seizing over 2500 computer files containing child pornography. Defendant is now charged with receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and 2252A(a)(5)(B). With this motion, Defendant moves to suppress the physical evidence seized during the execution of the warrant on two grounds: 1) that the search warrant lacked probable cause, and 2) that the search occurred at a location different than that specified on the search warrant. Defendant also moves to suppress the statements he made to the ICE agents during the execution of the search warrant, claiming that his rights under Miranda v. Arizona, 384 U.S. 436 (1966) were violated. Oral Argument and a hearing on Defendant's Miranda claim were held before this Court on July 10, 2009. For the reasons that follow, Defendant's motion is denied.

**I. Factual Background**

    A. The Investigation

In 2007 and 2008, ICE agents stationed in Frankfurt, Germany (the "ICE Attache") met with officials of the German Federal Police ("BKA"), who provided them

with reports and evidence relating to the distribution of child pornography on the Internet. (Affirmation of ICE agent Robert Raab, dated June 12, 2009 ("Raab Aff."), ¶3(a).)[1]  In July 2008, the ICE Attache forwarded a BKA report to the ICE Cyber Crimes Center stating that on July 3, 2008, an individual connected to the Internet through Internet Protocol ("IP") address 68.198.117.141, hosted a child pornography file known as "1.avi" through the eDonkey2000 peer-to-peer file-sharing network.  (Id. ¶3(b).)  Upon receipt of the BKA report, the ICE Cyber Crimes Center subpoenaed Internet Service Provider CSC Holdings Inc. ("CSC"), requesting the records for IP address 68.198.117.141.  (Id.)  In response, CSC informed ICE that that IP address was assigned to Defendant (Andrei Voustianiouk), who resided at 2424 Cambreleng Avenue, Apartment 1, in the Bronx, New York.  (Id. ¶3(e).)

### i. The Premises

To corroborate that the address provided by CSC belonged to Defendant, Agent Raab spoke with a United States Postal Service agent, who stated that Andrei Voustianiouk received mail at 2424 Cambreleng Avenue, Bronx, New York.  (Raab Aff. ¶4.)  Agent Raab also crosschecked the address against a New York drivers' license database, which listed Defendant's address as 2424 Cambreleng Avenue in the Bronx.  (Id. ¶8.)  Neither the postal agent nor the search of the license database provided Agent Raab with an apartment number.  (Id. ¶¶4, 8.)

---

[1]  Since August 2004, Agent Raab has belonged to a unit of ICE that investigates crimes against children, and he has executed numerous search warrants.  (Raab Aff. ¶1.)

2424 Cambreleng Avenue is a two-story residence with an apartment on each floor.[2]  (Affidavit of Andrei Voustianiouk, dated May 21, 2009 ("Voustianiouk Aff."), Ex. 1.)  There are no markings on any of the doors inside or outside 2424 Cambreleng Avenue to indicate which apartment is Apartment 1, or whether the building even contains numbered apartments.  (Voustianiouk Aff. Ex 1.)  Prior to executing the warrant, Agent Raab visited that address, and from his observations, inferred that Apartment 1 was the ground floor apartment.  (Raab Aff. ¶9(a).)

### ii. The "1.avi" File

Prior to providing an affidavit in support of the search warrant application, Agent Raab also viewed the "1.avi" file, which contains approximately thirty minutes of short video scenes.  (Raab Aff. ¶6.)    According to Agent Raab, more than twenty scenes contain child pornography, including scenes depicting: (1) an adult male ejaculating onto the genitals of a prepubescent female; (2) a prepubescent female sucking the penis of an adult male through a teddy bear; and (3) an adult male engaging in sexual intercourse with a prepubescent female.  (Id. ¶6.)

### B. The Warrant Application

On January 14, 2009, Agent Raab signed an affidavit in support of an application for a warrant to search 2424 Cambreleng Avenue, Apartment 1, Bronx, New York. (Affirmation of Kerry Lawrence, dated May 22, 2009 ("Lawrence Aff."), Ex. B [Warrant Affidavit].)  Agent Raab did not append the "1.avi" video or still pictures from the video, nor did he provide a description of the video in the warrant application; Agent Raab simply stated that the file was "known to German law enforcement to be a child

---

[2] In his affidavit submitted pursuant to this motion, Defendant stated that he lives in Apartment 2 of 2424 Cambreleng Avenue in the Bronx, New York. (Voustianiouk Aff. ¶2.)

pornography file." (Lawrence Aff., Ex. B ¶8.)[3]  Agent Raab described the premises to be searched as "a ground floor apartment inside a two-story white-shingled house." (Id. ¶4.) Agent Raab did not include Defendant's name in his affidavit in support of the search warrant application.  (Id. ¶10.)

On January 14, 2009, Magistrate Judge Dolinger signed a search warrant authorizing the search of "the premises known and described as 2424 Cambreleng Avenue, Apt. 1, Bronx, New York 10458." (Lawrence Aff., Ex. B at 31.)  Judge Dolinger did not ask Agent Raab any questions about the materials to be seized.  (July 10, 2009 Hearing Transcript ("Hr'g Tr.") at 5-6.)

C. The Search

Between 6:00 a.m. and 7:00 a.m. on January 22, 2009, Agent Raab and other officers executed the search warrant.  (Hr'g Tr. at 29.)  When the agents approached the front door of the two-story house, they saw two door buzzers to the left of the front door. (Raab Aff. ¶9.)  Neither buzzer was marked with an apartment number, so the agents rang both buzzers.  (Id.)  A light turned on from the second floor window, and then a man came to the front door of 2424 Cambreleng Avenue.  Defendant answered the door and the agents asked if he was Andrei Voustianiouk; Defendant responded that he was.  (Id. ¶9.)  The agents showed Defendant their credentials and informed him that they had a search warrant;[4] the agents did not show him the search warrant at that time.  (Id. ¶ 9(c).) Defendant then led the agents upstairs to his apartment.  (Raab Aff. ¶9.)  While inside Defendant's apartment, the agents took photographs of Defendant's mail, which showed

---

[3] In the affidavit, Agent Raab erroneously referred to the file as "Lavi," and not as 1.avi.  (Id. ¶¶7(a), 8.)
[4] Defendant claims in his affidavit that he was not told about the existence of the search warrant until the agents were inside of his apartment. (Voustianiouk Aff. ¶3.)

4

that no apartment number was listed on any of the mail received by Defendant.  (Id. Ex.
A [mail pictures].)

From inside Defendant's residence, ICE agents seized three computers and ten
external hard drives, which contained over 2500 files of child pornography.  (Raab Aff.
¶¶9(e), 10.)   The agents gave Defendant a copy of the search warrant as they were
leaving.  (Id. ¶5.)   At no time did Defendant consent to the search of his apartment.
(Voustianiouk Aff. ¶3.)

D. Statements Defendant Made to the Agents During the Search

While five agents searched Defendant's apartment, two agents, Raab and Cerutti,
questioned Defendant in his kitchen.  During the questioning, Defendant admitted to
visiting child pornography websites and downloading child pornography videos from the
eDonkey2000 network.  (Lawrence Aff. Ex. C.)  Defendant also stated that he alone had
access to the computers that were seized by the agents.  (Id.)  Defendant viewed the 1.avi
video and stated that certain scenes looked familiar, but he could not recall downloading
that exact video.  (Id.)

## II. The Search Warrant

In asking this Court to suppress the child pornography recovered from his
computers, Defendant first argues that the search warrant signed by Magistrate Judge
Dolinger was supported by an affidavit containing an insufficient showing of probable
cause, in that the supporting affidavit described the 1.avi file as "known child
pornography," a term defined in Title 18, United States Code Sections 2256(8)(A) and
(C) as any visual depiction of a minor engaged in "sexually explicit conduct."

18 U.S.C. § 2256(8) defines "child pornography" as any "visual depiction involv[ing] the use of a minor engaging in sexually explicit conduct." "Sexually explicit conduct," in turn, is defined in 18 U.S.C. § 2256(2) as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex (hereinafter, "intercourse"); (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse (hereinafter, "abuse"); or (v) lascivious exhibition of the genitals or pubic area of any person (hereinafter, "lascivious material")." 18 U.S.C § 2256(2)(a)(i)-(iv). Here, the supporting affidavit did not make clear which category or categories of sexually explicit conduct was in the 1.avi file, and Agent Raab averred that the magistrate judge here did not make any inquiries of him as to the nature of the file.

Precedential authority requires a magistrate judge, when confronted with descriptions of material falling into category (v), "lascivious exhibition of the genitals or pubic area," to "look at the allegedly pornographic images, or at least [assess them] based on a detailed, factual description…" United States v. Brunette, 256 F.3d 14, 18 (1st Cir. 2001); cf. New York v. P.J. Video, Inc., 475 U.S. 868, 874 n.5 (1986). Since the supporting affidavit relied on the statutory definitions of "sexually explicit conduct," the magistrate and Agent Raab should have been alerted to the possibility that the visual depictions in the 1.avi file, described as "known child pornography," might not support a search warrant.

Thus, the magistrate should have inquired as to what category of visual depiction was contained in the 1.avi file. Since he did not so inquire, the magistrate judge issued the search warrant without a proper inquiry into probable cause. See United States v.

Syphers, 426 F. 3d 461, 467 (1st Cir. 2005) ("The best practice is . . . to append the images or provide a sufficiently specific description of the images.").

Defendant's position, that a description of material as "known child pornography" is insufficient to establish probable cause, is supported by two cases in this district that postdate the affidavit here.  In United States v. Genin, 594 F. Supp. 2d 412 (S.D.N.Y. 2009) (Robinson, J.), the European Union's criminal investigation agency, Europol, gave the FBI a hard drive containing child pornography that was seized from a child pornography website operator.  Id. at 415.  In applying for a search warrant, the accompanying affidavit from the FBI stated that the hard drive contained "child pornography."  Id.  Judge Robinson ruled that the warrant was not supported by probable cause, finding that the general description of material as "child pornography" was insufficient because the material could fall under the "lascivious" category of sexually explicit materials.  See also United States v. Groezinger, 2009 U.S. Dist. LEXIS 53260 (S.D.N.Y June 8, 2009) (Robinson, J.) (holding that the description of material as "child pornography" was insufficient to establish probable cause).

Accordingly, the warrant signed by Magistrate Judge Dolinger was not supported by probable cause that the 1.avi file contained seizable child pornography.

## III.  The Good Faith Exception Applies, and the Recovered Evidence is not Suppressed

Typically, evidence seized in violation of the Fourth Amendment is not admissible.  See Weeks v. United States, 232 U.S. 383 (1914).  However, in United States v. Leon, 468 U.S. 897, 922 (1984), the Supreme Court ruled that evidence seized "in objectively reasonable reliance on" a search warrant is admissible, even if that

warrant is later deemed to be invalid.  The "good faith" exception, however, does not

apply in four circumstances:

> (1) where the issuing judge has been knowingly misled; (2)
> where the issuing judge wholly abandoned his or her judicial
> role; (3) where the application is so lacking in indicia of
> probable cause as to render reliance upon it unreasonable; and
> (4) where the warrant is so facially deficient such as by failing
> to particularize the place to be searched or the things to be
> seized that reliance upon it is unreasonable.

United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008) (quoting United States v. Moore,

968 F.2d 216, 222 (2d Cir. 1992)).

Here there is no evidence showing that Agent Raab knowingly misled the judge

or that the issuing judge wholly abandoned his judicial role, nor is there any showing that

the warrant was so facially deficient as to fail to particularize the place to be searched or

the things to be seized.  Rather, Agent Raab and the magistrate merely overlooked the

possibility that the visual depictions might fall into category (v) of sexually explicit

conduct, but failed the "lascivious" test.  This was not an application "so lacking in

indicia of probable cause," that "a reasonably well trained officer would have known that

the search was illegal despite the magistrate's authorization."  Leon, 468 U.S. at 922

n.23.  Agent Raab had examined the 1.avi file and seen the depictions of children

engaged in sexual intercourse.  As the Supreme Court recently reemphasized, the

exclusionary rule is a judicially-fashioned remedy whose focus is not on restoring the

victim to his rightful position, but rather on general deterrence.  See Herring v. United

States, 129 S. Ct. 695, 699-700 (2009).  Because of this underlying purpose, "evidence

should be suppressed 'only if it can be said that the law enforcement officer had

knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" Id. Here, this was not the case.

Indeed, prior to the application for the warrant, Agent Raab had personally reviewed the video received by Defendant, and he knew that the video contained images of minors engaged in the following sexual conduct: 1) "an adult male ejaculating onto the genitals of a prepubescent female; 2) a prepubescent female sucking the penis of an adult male through a teddy bear; and 3) an adult male engaging in sexual intercourse with a prepubescent female." (Raab Aff. ¶6.) This type of sexually explicit conduct involving minors is clearly defined and easily recognized, and does not require a magistrate's independent evaluation, as would "lascivious" material.

While additional information known to the affiant but not expressed in the affidavit cannot cure a lack of probable cause for the issuing magistrate, such information "does tend to support the officers' good-faith reliance on the warrant." Falso, 544 F.3d at 127 n.22; see also Herring v. United States, 129 S. Ct. 695, 703 (2009) (finding that, although the question of "good faith" looks at the objective reasonableness of the officer's reliance, that analysis should take into account "all the circumstances" including "a particular officer's knowledge and experience"); United States v. Rodriguez, 484 F.3d 1006, 1012 (8th Cir. 2007) (finding that the officer's awareness of information in addition to that in affidavit justified reliance on defective warrant); Groezinger, 2009 U.S. Dist. LEXIS 53260, *26 (holding that information contained in agent's affirmation subsequent to the issuance of the warrant, although it could not support the probable cause claim, was strong evidence of good faith). Hence, given the lack of any clear requirement at the time in this Circuit—or indeed in any other Circuit—that a warrant

9

affidavit contain a detailed description of images depicting the type of sexually explicit conduct that Agent Raab knew was contained in the "1.avi" file, Agent Raab's reliance on the magistrate judge's probable cause determination was reasonable and in good faith.[5]

In view of the reasoning above, the good faith exception applies and the evidence is not suppressed.

**IV. Defendant's Claim that the Evidence Should Be Suppressed Because the Agents Searched a Location Different from that Specified in the Warrant is Rejected.**

The search warrant here, sworn to by Agent Raab, listed the location to be searched as "2424 Cambreleng Avenue Apt. 1, Bronx, New York 10458," and described the premises to be searched as the "ground floor apartment inside a two-story white-shingled house." Defendant argues that the evidence seized during the search must be suppressed because Agent Raab did not search Apartment 1, but rather searched the second floor apartment, which, according to Defendant, is Apartment 2.

Technical errors in a search warrant, such as an incorrect apartment number, do not automatically make searches executed under such a warrant invalid. See, e.g., United States v. Valentine, 984 F.2d 906 (8th Cir. 1993) (admitting evidence seized at house number 3050 pursuant to a search warrant for house number 3048). Rather, the Second Circuit has set forth the following standard for evaluating inaccurate descriptions of the premises to be searched pursuant to a search warrant:

---

[5] Moreover, as the exclusionary rule was created to deter Fourth Amendment violations by police officers, see Weeks, 232 U.S. at 394, suppression of the evidence here would not serve to deter such police violations, as Agent Raab, who acted reasonably and appropriately throughout the lengthy investigation and search, had seen in full the child pornographic materials allegedly possessed by Defendant, and had no reason to suspect that probable cause was lacking for the issuance of the warrant.

> "[I]t is enough if the description is such that the officers armed with a search warrant can with reasonable effort ascertain and identify the place intended." National City Trading Corp. v. United States, 635 F.2d 1020, 1024 (2d Cir. 1980). Courts of Appeals have rejected Fourth Amendment challenges to warrants that contain partial misdescriptions of the place to be searched so long as the officer executing the warrant could "ascertain and identify the target of the search *with no reasonable probability of searching another premises in error*," United States v. Valentine, 984 F.2d 906, 909 (8th Cir.) (emphasis added). Warrants have been upheld despite "technical errors," such as an incorrect street address, when the possibility of actual error is eliminated by other information, whether it be a detailed physical description in the warrant itself, supplemental information from an appended affidavit, or knowledge of the executing agent derived from personal surveillance of the location to be searched.

Velardi v. Walsh, 40 F.3d 569, 576 (2d Cir. 1994).

Here, the search of Defendant's apartment was valid because there was no "reasonable probability of searching another premises in error." First, Defendant personally identified himself and his apartment. Furthermore, during the course of his investigation and before preparing the Warrant Affidavit, Agent Raab had previously learned that: 1) the IP address that was hosting the 1.avi file at the relevant time was registered to Andrei Voustianiouk at 2424 Cambreleng Avenue, Apt. 1, Bronx, New York; 2) an individual named Andrei Voustianiouk was receiving mail at, and had a driver's license with the address of, 2424 Cambreleng Avenue, Bronx, New York; and 3) the building located at 2424 Cambreleng Avenue, Bronx, New York was a two-story building with two unlabeled buzzers by the front door. (Raab Aff. ¶¶3-4, 8-9.) Further, Agent Raab had downloaded Defendant's picture on the Internet prior to applying for the warrant, and thus knew what Defendant looked like. (Hr'g Tr. at 29.) Agent Raab obtained the warrant here to search the address of Defendant, whose name and address

had been determined by him to be linked to the suspect material.  See United States v.

Burke, 784 F.2d 1090, 1092-93 (11th Cir. 1986) ("[I]n evaluating the effect of a wrong

address on the sufficiency of a warrant, this Court has also taken into account the

knowledge of the officer executing the warrant, even where such knowledge was not

reflected in the warrant or in the affidavit supporting the warrant."); United States v.

Musson, 650 F. Supp. 525, 538 (D. Colo. 1986) (same).

        Thus, when Defendant—whose name and face Agent Raab instantly recognized—

answered the door, told the agents that he was Andrei Voustianiouk, and led the agents

upstairs, Agent Raab understood that Defendant was leading the agents to the correct

apartment.   Maryland v. Garrison, 480 U.S. 79, 84 (1987) ("[W]e must judge the

constitutionality of [the officer's] conduct in light of the information available to them at

the time they acted.") (emphasis added).[6]

        Put differently, because Agent Raab intended to search the apartment belonging to

Defendant, there was little chance that the ICE agents would search the wrong apartment.

See United States v. Williams, 69 Fed. Appx. 494, 496 (2d Cir. 2003) (warrant upheld

despite technical error because agents had other information eliminating risk that agents

would mistakenly enter wrong apartment); United States v. Campanile, 516 F.2d 288,

291 (2d Cir. 1975) (where warrant referred to "only basement apartment" and evidence

later showed there were two basement apartments, court found variance not enough to

---

[6] The Second Circuit stated in Velardi that it is unclear whether a "misdescription can be overlooked only
when the correcting information was known to the officers at the time they obtained the warrant or also
when such information reliably comes to their attention thereafter."  Velardi, 40 F.3d at 577. (Def.'s Reply
Br. 7.)  Based on this, Defendant argues that Agent Raab should have applied for an amended warrant.
Defendant's argument ignores the fact that the most crucial piece of outside information—Defendant's
name and physical description—was known to Agent Raab before he applied for the warrant.  Thus,
Defendant's reliance on Velardi is misplaced.

make warrant void on its face because "agents clearly knew which apartment they were there to search"); United States v. Turner, 770 F.2d 1508, 1511 (9th Cir. 1985) (upholding warrant with incorrect street address because, among other things, warrant executed by officer who assisted with warrant application and who personally knew which house was to be searched); see also United States v. Bonner, 808 F.2d 864, 866 (1st Cir. 1986) (incorrect address did not invalidate the warrant where "[t]here was no risk that federal agents would be confused and stumble into the wrong house, or would take advantage of their unforeseeable windfall and search houses indiscriminately, . . .").

Nowhere in Defendant's brief does he suggest that there was a probability of searching the wrong apartment. Rather, Defendant contends that under precedent set by the United States Supreme Court in Maryland v. Garrison, 480 U.S. 79, 85-87 (1987), when officers discover that the search warrant does not permit a search of the location they are currently searching, they must discontinue their search, absent any exigent circumstances, and obtain an amended search warrant. Here, Defendant contends, there were no exigent circumstances justifying the continued search, so the agents should have kept the status quo and amended the warrant to reflect the correct apartment. See also United States v. Santore, 290 F.2d 51, 67 (2d Cir. 1960) (refusing to suppress the evidence where the premises, which was occupied by two families, was described as a "single family house," but stating that once the mistake was discovered, the officers were required to stop the search). Defendant's reliance on Garrison is misplaced because in Garrison, officers actually searched the wrong apartment (one that was not connected to the search warrant in any way), while here, the agents were led by Defendant to search

13

the correct apartment, which was the target of the warrant, and the agents never had a chance to venture into an incorrect apartment.

Accordingly, Defendant's motion to suppress on this ground is denied.

## IV. Defendant's Claim that Statements Made During Questioning Should Be Suppressed is Rejected

Defendant claims that the statements he made to ICE agents during the search of his apartment should be suppressed because they were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).[7]

It is axiomatic that police may not interrogate a suspect who has been taken into custody without first warning the person "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda, 384 U.S. at 479. The government acknowledges that Defendant did not receive Miranda warnings prior to making the challenged statements to the ICE agents, but it argues that no such warnings were required because Defendant was not "in custody" at the relevant time. See Parsad v. Greiner, 337 F.3d 175, 180 (2d Cir. 2003) (Miranda warnings apply only to custodial interrogation); Tankleff v. Senkowski, 135 F.3d 235, 242 (2d Cir. 1998) (same). Accordingly, the suppressibility of Defendant's statements turns on whether he was in custody during the ICE interviews.

---

[7] Defendant further argues that his statements should be suppressed because they are the "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 484-87 (statements made during an illegal search or arrest should be excluded provided that the illegal search or arrest caused the statements to be made); see also United States v. Santos, 303 F. Supp. 2d 333, 349 (S.D.N.Y. 2003) ("Any statements that [defendant] made following the unlawful recovery of the weapons and the unlawful arrest must be excluded as fruits of the poisonous tree."). However, because the search here was valid, Defendant's statements during the search are not the product of an illegal search.

14

The test for determining whether a suspect is "in custody" is an objective one; the subjective views of either the officer or the suspect are irrelevant.  United States v. Kirsteins, 906 F.2d 919, 923 (2d Cir. 1990).  To ascertain whether a Defendant is "in custody," a court must ask "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).  As the Second Circuit has explained, this test is two-fold: (i) it must be determined whether an objectively reasonable person in the defendant's shoes would have thought he or she was free to leave, and if not, (ii) whether an objectively reasonable defendant "would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest."  United States v. Newton, 369 F.3d 659, 671 (2d Cir. 2004) (quoting United States v. Ali, 68 F.3d 1468, 1472 (2d Cir. 1995)).

An evidentiary hearing was conducted on July 10, 2009 before this Court, at which Agents Raab and Cerutti testified.  The Court credits the testimony of both agents.[8] At 6:30 a.m. on January 22, 2009, seven armed ICE agents (including Agents Raab and Cerutti) went to Defendant's home, located at 2424 Cambreleng Avenue in the Bronx. (Hr'g Tr. at 38-39.)  Upon their arrival, the agents rang "several bells outside next to the door of the residence" because none were marked with Defendant's name.  (Id. at 39.) Defendant answered the door, and Agent Raab recognized him from a picture he had seen on the Internet.  (Id.)  Defendant then identified himself as Andrei Voustianiouk, and the agents told him that they had a search warrant and needed to come in; Defendant replied

---

[8] Defendant presented no evidence at the hearing.

that he understood, and he opened the door and led the agents upstairs into his apartment. (Id. at 40.)

Once inside the apartment, Agents Raab and Cerutti spoke with Defendant in the kitchen of his apartment, while the other five agents searched the premises. (Id. at 40-41.) Agents Raab and Cerutti told Defendant that the agents were there to execute a search warrant, that Defendant was not under arrest, that the agents did not have an arrest warrant, and that while the agents would like to speak with Defendant, Defendant did not have to speak with them. (Id. at 40-43, 50, 59.) At no time did the agents attempt to read Defendant his Miranda rights. (Id. at 50.)

In response, Defendant indicated that he wished to speak with the agents, and the agents questioned him for approximately one hour, during which Defendant admitted to viewing and downloading child pornography. (Id. at 42, 58; Lawrence Aff. Ex. C.) Defendant never indicated that he did not want to speak with the agents, he never indicated that he wanted the interview to end, and he never asked to leave the apartment. (Hr'g Tr. at 43-44.) At one point during the interview, Defendant asked to use the bathroom, and he was escorted by one of the agents to use the bathroom.[9] (Id. at 44.) At no point was there any physical contact between Defendant and either agent, and no voices were raised or threats issued. (Id. at 45.) The agents never drew their weapons nor did they place Defendant in handcuffs. (Id. at 45, 59.) No officers were physically blocking the exit to the apartment or stationed at the door to the apartment. (Id. at 44.) Defendant was not arrested at the conclusion of the search. (Id. at 48.)

---

[9] Defendant claims that he asked to wash his face during the interview in the bathroom, but was stopped from going to the bathroom and was directed to use the sink in the kitchen. (Def.'s Br. 27.) At the hearing, Agent Raab testified that this sounded "familiar" to him. (Hr'g Tr. at 51.)

The first prong of the test laid out in <u>Newton</u> was satisfied here, as Defendant was not free to leave his kitchen.  Seven armed agents were present during the search, and two agents restrained Defendant's movements while the other five agents executed the search.

However, based on the evidence presented at the hearing, no reasonable person "would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest."  <u>Newton</u>, 369 F.3d at 671.  When Defendant allowed the agents to enter his home, they stated that they were there to execute a search warrant, and they explicitly told him that they had no arrest warrant and that he was not under arrest.  No agent acted in such a manner as to convey to Defendant that his freedom of action was curtailed to the degree associated with a formal arrest.  Defendant was questioned for an hour in his own home, he was not handcuffed or otherwise restrained, he was not removed from his home, and most importantly, he was specifically told that he was not under arrest and that he did not have to speak with the agents.  <u>See</u> <u>Newton</u>, 369 F.3d at 675 (holding that the defendant was in custody due to being handcuffed, but concluding that absent the handcuffs, the defendant would not have been in custody despite the fact that he was surrounded by six armed officers because the questioning took place inside defendant's home); <u>United States v. Rakowski</u>, 714 F. Supp. 1324, 1334 (D. Vt. 1987) ("Lower courts . . . almost universally hold that questioning in a suspect's home is not custodial.").  Under these circumstances, Defendant's freedom of movement was not restrained to a degree associated with formal arrest, and therefore, the ICE agents were not required to advise Defendant of his rights.

Accordingly, Defendant's motion to suppress his statements to ICE agents during the search is denied.

17

## V. Discovery Requests

Defendant's request for a witness list thirty days before trial is denied at this time because Defendant has made no "specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case."  United States v. Cannone, 528 F.2d 296, 301 (2d Cir. 1975); see also United States v. Bejasa, 904 F.2d 137, 139-40 (2d. Cir. 1990); United States v. Ahmad, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) (request for early discovery of witness list denied as Defendant has not met his burden of showing that disclosure is material to his defense and reasonable in light of circumstances surrounding his case).

Defendant's request for an exhibit list is also denied at this time because while Rule 16 obligates the Government to provide the defense with documents "the government intends to use … in its case-in-chief at trial," it does not require that the Government provide a list of the exhibits unless Defendant presents grounds supporting its need for having a list.  Fed R. Crim. P. 16(a)(1)(E)(ii); see United States v. Falkowitz, 214 F. Supp. 2d 365, 392 (S.D.N.Y. 2002) (disclosure of exhibit list is within the sound discretion of the district court and is typically ordered if there are voluminous documents).

Defendant's motion for early disclosure of Jencks Act material under 18 U.S.C. § 3500 and Giglio v. United States, 405 U.S. 150 (1972) is also denied.  With respect to the prior statements of witnesses the government is required to disclose under 18 U.S.C. § 3500(a), district courts lack authority to compel early disclosure.  In re United States, 834 F.2d 283, 287 (1987); see also United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001); United States v. Fennell, 496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007).

18

With respect to Defendant's motion for early disclosure of <u>Giglio</u> material, the government is only required to produce <u>Giglio</u> material in time for its effective use at trial.  The Government has represented to the Court that it will turn over such material in time for effective use by Defendant, and this Court orders that such material be turned over one week before calling the relevant witness to testify.  <u>See</u> <u>United States v. Trippe</u>, 171 F. Supp. 2d 230, 237 (S.D.N.Y. 2001).

Further, Defendant requests disclosure of evidence the government will seek to admit under Rule 404(b).  Rule 404(b) only requires "reasonable notice in advance of trial" for the admission of prior convictions and bad acts.  The Government has noted its obligations under Rule 404(b), and has indicated that it will provide notice of the 404(b) evidence it intends to introduce two weeks before beginning of trial.  Although there is therefore no need to issue the order Defendant seeks, <u>see</u> <u>Fennell</u>, 496 F. Supp. 2d at 284, the Court orders that applications under Rule 404(b) be filed two weeks before trial.

Lastly, and providing no legal authority for his motion, Defendant asks this Court to order the Government to certify when discovery is complete.  The Government is not required to stop investigating or to stop gathering evidence in advance of trial.  Further, the Government has proffered that it has already disclosed and produced the evidence it intends to use at trial in a timely manner. The Court credits the Government's averments.  Accordingly, Defendant's motion in this regard is denied.  Defendant may bring any specific discovery requests that are not met by the Government to the Court's attention thirty days beforehand.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to suppress physical evidence obtained during the search of his apartment and statements he made during that search is denied. Defendant's motion for early discovery is likewise denied. The parties are to attend a conference in on August 11, 2009 at 11:00 a.m. to set a date for trial.

IT IS SO ORDERED.

Dated:   New York, New York

August **3**, 2009

Robert P. Patterson, Jr.

U.S.D.J.

Copies of this Opinion and Order faxed to:

Attorney for the Government
Janis M. Echenberg, Esq.
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel: (212) 637-2597
Fax: (212) 637-2527

Attorney for Defendant
Kerry A. Lawrence, Esq.
Briccetti, Calhoun & Lawrence LLP
81 Main Street, Suite 450
White Plains, NY 10601
Tel: (914)-946-5900
Fax: (914)-946-5906

20